CITY MAGISTRATE'S COURT—FIRST DIVISION—SEVENTH DISTRICT,

Dec. 11, 1914.

# THE PEOPLE ex rel. ADELE D. PRIESS v. EVANGELINE S. ADAMS.

(1.) FORTUNE TELLING—CODE CRIM. PRO., § 889—ASTROLOGY.

A prophecy of future events involving a negative or affirmative deception by a person professing to tell fortunes constitutes a violation of Section 889 Code of Criminal Procedure.

(2.) SAME—ASTROLOGY.

But where defendant prepares a astrological horoscope of one applying therefor and gives the relative position of planets at the time of her birth basing the horoscope on the well known and fixed science of astronomy it is not a violation of law.

(3.) SAME—PALMISTRY.

For a palmist to tell that a certain line in the palm of the hand is the life line, etc., is not a violation of the law.

APPEARANCES.

*L. S. Lockhart Esq., Assistant District Attorney.*

*Clark L. Jordan, Esq.,* for Defendant.

FRESCHI, CITY MAGISTRATE:

This case presents two considerations; first, the question of fact in order to determine what actually was stated by the defendant, and secondly, whether such a case comes within the meaning of the words " pretend to tell fortunes " of the statute alleged to have been violated (sec. 889, subd. 3, Code of Criminal Procedure).

The practice of astrology is, in my opinion, but incidental

to the whole case and as bearing only on the question of the good faith of the defendant, as I will point out later. The statute provides that persons who pretend to tell fortunes shall be adjudged disorderly persons and punished as prescribed therein.

The only witness for the prosecution is Mrs. Adele D. Priess, who is attached to the Detective Bureau of the New York Police. She testified that on May 13th, 1914, she visited the defendant at her studio located at Carnegie Hall, in the City and County of New York, and there had her horoscope " read " by the defendant.

The complainant claims that all she can remember of her conversation with the defendant is as follows:

" There was a sheet of paper before her (defendant) with a circle described on it, divided into sections. The defendant referred to a book, and occasionally wrote on the paper. The defendant said ' Now place your hands on the table, palms down. Place them very flat," which I did. The defendant said, ' Your hands show that you have got practical common sense. You should not go to people for advice. You should follow out your own ideas, and carry out your plans as you make them at first. The left hand tells of your early life and the right hand of your later life. You are going to be more successful and have more magnetism in later life than in earlier life. This is shown by the third finger of your right hand being longer than the third finger of your left hand. There is a new epoch opening for you. If you were a young girl, I should say that you were going to have a violent love affair, but I don't know if you are free.' I said, ' I have been divorced a number of years.' She said, ' Then I should say that you are going to meet a man for whom you might form an attachment, but I should be very careful about marrying him in case his circumstances should be such that he could not get along without your help. I was right in selecting midnight as

about the time of your birth because Mars was in the marriage sign, which shows separation. Let me see the palms of your hand.' I turned my hand over. The defendant said 'I see two marriages in your hand. You are very optimistic. You might be depressed for a little while but that passes over. You are too unselfish for your own good. People are apt to impose upon you. During the years 1907 and 1908 were you very unhappy?' I replied 'Yes.' The defendant said 'You will never again be as unhappy as you were then. Now, are there any young people about you?' I said 'Yes, I have two daughters and a son.' The defendant said 'Is your elder daughter married?' I said 'No.' The defendant said 'What is the date of her birth?' I said 'October 12th, 1889, at eleven A. M.' The defendant took a fresh piece of paper, on which there was a circle described, as I described before, and consulted a book, and wrote on the paper. The defendant said, 'Your daughter is going to have a very eventful life. She will marry the first man to whom she becomes engaged. Do you know that she has great talent. Does she trim hats and sew?' I said 'No, she does not, neither has she great talent. She is lacking in ambition. What you say belongs more to the younger girl.' The defendant said 'You do not understand your daughter. Sometimes she is obstinate. Tell me the date of the younger girl's birth.' I said, 'April 16th, 1894, at two o'clock P. M.' The defendant said 'Your daughter is very ambitious, she was born when Saturn was rising. She sometimes gets discouraged, but that soon passes over just like a wet blanket. Tell me what is her occupation?' I said 'My daughter attends high school. I should like her to become a teacher, but she is thinking of opening a dancing studio with another young lady in the Fall.' The defendant said 'I should not advise her to do that, to open a studio in the Fall. Perhaps next year would be better. Do you know the date of the other young lady's birth?' I said 'No.' The defendant said 'I

should not spend so much money; put up so much money, if
I knew the date of this other young lady's birth, I could give
her more advice. Your younger daughter will marry well, but
your elder daughter will make a far better marriage than the
younger one. What is the date of your son's birth?' I said
'He was born July 17th, 1891, at 4:30 A. M.' Then the defend-
ant took a fresh piece of paper with a circle inscribed on it,
and then consulted the book. The defendant said 'Your son
will be very successful. He makes friends very easily. He
should be careful about his companions as he is apt to be
influenced by them. He should guard against dissipation.
What is his occupation?' I said 'My son attends college, he
expects to graduate this year. He would like to take up a min-
ing engineering course. I cannot afford to let him have it. He
might take something in the electrical line.' She said 'Your
son is very bright, but the work around bridges or water works
I should not advise him to have anything to do with, going up
in an aeroplane or around electricity where there is a high volt-
age, or have anything to do with automobile racing, for he
might meet with an accident. Your son should be very care-
ful for he will die as the result of an accident or die very
suddenly just like that,' snapping the defendant's fingers.
'You are going to be very much upset during July or August
about one of your children, but things are going to be very
bright for you.' I said to the defendant 'How much is that?
Five dollars?' The defendant said 'Yes.' I thereupon paid
the defendant. The defendant said 'Now if your daughter and
her friend will come here some evening about five o'clock I will
give them a reading for three dollars.' *That is all I remember.*"

Assuming that this is a substantial account of what happened
between the complaining witness and the defendant, I think that
this evidence if uncontroverted, would entitle the people to
a conviction. A prophecy of future events involving a negative
or affirmative deception constitutes a violation of law.

There is a conflict, however, on material points of the case between the prosecuting witness and the defendant's version of what happened. The complainant admits that she cannot remember every word of the interview, which lasted, according to her best recollection, about thirty-five minutes. Yet, it took the complainant only five minutes to narrate what she claims was said by both parties. The defendant, on the other hand, claims that the interview lasted more than hour; and it is obviously fair to assume that the complainant did not fully and fairly present all the facts in the case. I do not mean to impute any improper motive to the complainant. It is easy to understand how she might forget many of the involved statements made by the defendant in explaining the horoscope which she constructed. Here is a fair illustration of the reliability of the complainant's memory, so far as this case is concerned, as to the conversation between the defendant and herself. She testifies that the defendant referred to Mars and Saturn and denies that the words "Zodiac, Venus, Jupiter, Mercury" were used, or that anything was said about the moon. This is of importance in view of the claim of the defendant as to the nature and character of the conversation between them. The following is a part of the direct and cross-examination of the defendant:

"     *     *     *     I asked her to be seated and asked her time of birth. She said 1865, January 31st. Q. You put it down? A. I put it down at the time she said it. I asked her if she could not give me the hour of her birth. She said no. Then I said 'It will be impossible for me to give you a correct or wholly satisfactory reading because all I can tell you is what I can tell any one who was born on that day!' I then said 'I am determined whether by your appearance——.' I asked her to move her head so that I could see her profile. I studied her face for a moment like over this book, which gives the type of the twelve signs of the Zodiac. I determined

——it is the 'Tables of Ascendants.' I decided there were two signs under which she might be born. That her make-up— that was one of them, Scorpio, that we might get near her type (handed to Court) the top of the plate 8. I said 'You might have been born under Scorpio or Taurus, plate 2.' I then said 'If you were born under Scorpio, you would be secretive and non-communicative. If under Taurus, you would be frank, outspoken and domestic.' She said, 'I am non-communicative.' I don't know what else. I then looked up in that same book to see when Scorpio would rise (explained to Court). I found that at midnight, the sign Scorpio would rise. So I added— that is her sideral time for noon of January 31st, 1865, I added twelve hours. I found that sideral time for that date at midnight was eight hours and forty-three minutes. I turned to another book 'The Table of Houses,' issued and prepared from the Nautical Almanac. We have records for one hundred years. Q. Records of what? A. The exact position of the stars for every day in the year for the last one hundred years. I figured it out. Q. Before coming to that, you figured out twelve hours added? A. Because when this sign Scorpio would rise at midnight, which is twelve hours. We have everything for London. Twelve P. M. would add twelve hours. Q. So that you figured out; could you tell which process the figures you put that down there? A. I can with the Table of Houses. Q. Leaving the process by which you arrive at the result, just give the conversation, leaving out the things which you put down on the paper, state what was said to you and what you said to her? A. After I had the chart erected, I told her I got characteristics from the hand. I asked her to sit to the left of my desk, of a small table. I asked her to place her hands on that table, palms down. I glanced over the hand and told her many things about her nails. She should never take antikamnia, nor any coal tar products, because there was a tendency to suffer from poor elimination, and anything that depressed the heart would be

bad for her. Then I referred to her third finger. I told her that if she would always go by her first impression, what Wall Street men called 'hunches' she would be quite fortunate in speculation. Then I also had indications of being lucky in chance. Then I also told her that the left hand indicated early life or up to about twenty-eight or thirty, and the right hand the balance of the life. The third finger in palmistry is supposed to represent whether one is fortunate in pure chance, whether they are likely to happen to do the wrong thing, their impulses. As she had that finger very long, it was an indication that she had got strong feeling of what was the best thing to do. But she must not talk it over with any one because then judgment would come in. Q. I don't want any of your conclusions of the operation of your mind but just what you actually did say along that line, about 'hunches' and the speculation and so on? I said that the third finger in palmistry is said to rule, the 'sun finger' as we say. That it being long indicates that she had quite strong impressions, the kind of impressions that the Wall Street men call 'hunches,' and if she would go by these 'hunches' without talking them over with any one that she might be fortunate in a speculation. Q. Do you ever tell a person that something is going to happen? A. No, sir. Q. Go on with the conversation? A. I also said that the left hand indicated the natural tendencies, was supposed to rule until twenty-eight, and the right hand the balance of life, and that as this third finger was longer on the right hand the indications were that the last half of her life should be more fortunate than the earlier half. Q. Was there anything said about happiness? A. I think at the same time, I thought the last half should be more happy, more fortunate, she would be more magnetic because of this third finger. Q. What else do you recall that was said during the interview? A. I pursued my usual method. I took up Mercury which rules, was in the sign Capricorn, and that gave her a tendency to have great

periods of depression. She would feel at times as if a wet blanket had been thrown over her feelings, and then would disappear without apparently any reason. One of the things that I laid a great deal of stress upon was the position of her moon. The moon was in conjunction with the planet Neptune. I asked her what happened to her mother, if there was any strange fatality connected with her mother's life. Q. You asked her that before she said anything about it? Yes, sir. It took her a long time before she would commit herself. At last she said 'Yes, my mother was shot.' I read it right on the chart, 'Mother was shot but didn't die until eight years later.' Right before her I read that on the chart. Q. That information you got from her? A. Yes, sir. Q. It was afterward you had inquired if there were not some—. A. Fatalities or something unusual regarding her mother's life. Q. What was it that caused you to ask her that question? A. Every client who comes to me—because her moon was in conjunction with the strange planet Neptune. Neptune is the only planet that modern astrologists have not correlated facts regarding, because Neptune has been discovered since any of the old reliable books have been written. So all astrologists are trying to find out just what Neptune means in the horoscope, I in particular because I am writing a book on astrology. I am holding it over simply for future information. All the balance of the book is finished. I should have published it last year but I wanted to find more facts to give my colleagues about Neptune. This was a very unusual case. Q. What do you mean by 'her moon?' A. The moon in her horoscope, the position of the moon in her horoscope, midnight, 1865, January 31st. Q. Anything further that you said to her? A. I spoke of the facts that the planet Uranus during this year would be in conjunction with the sun, which occurs only once in eighty-four years, and that it was also an epock-making period. That this was the planet that brought about

changes, a great deal of development in the character, etc.,
and that if she were a young girl it might have caused her to
have an opportunity to marry.   That in this case it might
bring some one into her life who would bring some new interest
or something of a philosophic or scientific character to her.
Q.   Anything further?   A.   Yes, sir, I talked for an hour.   I
don't know that this is all I stated about her chart, but I do
remember that I asked her if there were any other people about
whom she might like to ask.   (By District Attorney:)   Q.   I
would like to know whether the witness is now testifying to what
she told her this day or whether the indications on this chart.
—A.   What I told her, but this recalls it to my mind.   This is
what I would have to tell her.   Then she gave me the date.   Q.
Can you recall it without looking at the chart?   A.   No, sir.
She gave me the date of the daughter, born 1889, October 12,
11 A. M.   That chart I didn't draw up because I only drew up
one.   I cannot give a great deal without knowing the exact
position of the heavens in ephemeris.   I then referred to this
book.   This is a book in which is recorded the positions of the
planets from 1888 to 1909.   This one from 1844 to 1865.   I
have others that carry it to 1915.   I told her that the sun was
unfriendly to Herschel and that that indicated that she would
not marry or be likely to marry the first man to whom she was
engaged, that she must be careful about her friendships, as it
indicated temptations.   I asked her—(By Defendant's Coun-
sel:)   Q.   What is the age of the girl?   A.   1889, October
12th, I told her that Jupiter which—I don't think I can re-
member how I put it—the position of Jupiter was in Capricorn,
and that I had found many successful dressmakers and milliners
that had in that sign, and that she ought to have ability in that
direction.   Q.   Did you ask her anything about whether she
did any work for herself?   A.   No, sir.   Q.   Go on, what else,
do you recollect that you said to her?   A.   I don't recollect
anything.   She then gave the date of another daughter born

April 16th 1894. I don't recollect what I told her about her character, but I do recall that she told me that she was think-ink of starting a dancing school this fall. But I do remember that I told her that Saturn was rising and that that indicated that she was ambitious but lacking in confidence, or might be at times lacking in confidence, I thought was the sum of it. Then she told me she was thinking of starting a dancing school. I told her that the fact that Saturn was not fortunate for the earlier life and that I would not recommend it. Q. Where did you get the fact that Saturn was rising? A. I looked it up in the same book, the ' Table of Ascendants ' and found it. It is right there. The sign Virgo was rising. Saturn was in that year in Libra. So it would just come up. It would be about to ascend. Q. What else did you talk about? Who else? A. She then gave me the date of her son's birth, 1891, July 17th, 4 : 30. I said emphatically it was a very unusual horoscope. Q. Did you tell her why it was unusual? A. Yes, sir. * * * Of course, you understand that I give an interpretation of the planets. * * * (By the Court:) Q. Did you say to Miss Priess in words, substance or effect ' Your daughter is very ambitious, she was born when Saturn was rising, she some-times gets discouraged, but that sign passed over just like a wet blanket? ' A. I explained the apposition of Mercury indicated that she would have periods of depression and that it was similar to a wet blanket, but Your Honor, I could not give a reading without mentioning the planets. My contention is if I did it in the case of Isabella Goodwin, when I did not suppose it made any difference whether I did or not, and I knew the Magistrate threw that out of court because I did it, is it logical to suppose that I changed my method and to this client I did not do it? Is that logical? Q. She states you asked her about the daugh-ter's occupation and she told you about her daughter's attend-ing school and about her ambition to become a teacher, and that she had in mind opening a dancing studio sometime in the

fall? A. In substance. Q. In that connection the prose-cutrix testified that you said ' should not advise her to do that, to open a studio in the fall, perhaps next year, would be better.' Do you remember saying that? A. In substance, yes, but I went into a great deal of explanation in saying it. I said that next year she was going to have better planetary conditions, and if she still thought of doing it the chances were more favorable of meeting with success. Q. And in speaking of the daughter's future the prosecutrix claimed that you used this form of language: ' Your daughter will marry well, but your older daughter will make a far better marriage than the young one? ' A. No, sir, not in so many words. Q. Do you remember just how you did speak of that? A. No, I really don't. Q. But you are certain you did not state the daughter will marry well and the older daughter will make a far better marriage—you dispute that you used just that form? A. Yes, absolutely, and my client knew it too. Q. In speaking of the son, the prosecutrix asserts you said: ' Your son will be very successful, he makes friends very easily. He should be careful about his companions as he is apt to be influenced by them. He should guard against dissipation.' How did you say that about the son, that he will be successful? A. Not as it is put there. She further states that I said he would be killed. If I had said that why would I have cautioned her as to what he did, if I did not inform her that he would not be killed if he were careful. (Mr. Jordan: she said you said he would die suddenly.) Q. This is the language she claimed you used: ' Your son should be very careful as he will die as the result of accident or just like that (you snapping your fingers).' Did you say that in that way? A. No, sir, not that way. Q. Do you remember now what you said about the son? A. I would not like to say now, I am tired. I know certain planets were in certain aspects, which indicated danger of an accidental death and that because of that I advised him not to work where

there was high voltage. I did tell her he had ability along electrical lines, but that he ought not to work in high voltage because of this aspect in his horoscope which indicated danger of accidents and even accidental death. I said it just that way. Q. Do you remember whether or not you said you saw two marriages in her hand? A. I remember that I saw two lines which I pointed out to be indicating the possibility of two marriages. Q. Those lines are always at a certain portion? A. Right there (indicating). Q. At the base of the smallest finger of the hand, on the side of the hand? A. Yes. Q. Then she claims you said ' I should say you are going to meet a man for whom you might form an attachment but I should be very careful about marrying him in case his circumstances should be such that he could not get along without your help? A. No, I did not say that. That is not my language and my way of getting at it. Q. Did you say too ' When you meet a person (I believe it was about the fingers of the two hands) that you are going to be more successful and have more magnetism in later life than in earlier life?' Did you say that in that way? A. No, sir, I went into a very careful explanation of hands and fingers. Q. Well the witness does claim, however, that you did say that that fact was shown by the third finger of the right hand being longer than the third finger of the left hand. Now did you say to her: ' There is a new life opening for you?' A. I explained that Hershel is in conjunction with her sun this year, and that that always indicated new vibrations, new conditions, and I went into an explanation of the planet Hershel being with her sun did indicate certain things, but nothing in the way of— Q. Did you say: ' I should say that you were going to a have a violent love affair?' A. I don't remember saying it."

Here also are the defendant's own words: " I explain in the beginning I simply give what is shown by the stars.  *  *  * If I read for a client I always say ' This is indicated ' and I

always explain that no astrologer can conscientiously say that any one thing will happen. Sometimes a lady will say ' Will I be married in 1914? ' I say, ' I don't know whether you will or not I think you have an opportunity to be but all I can is— whether you will I can't tell. Astrology does not indicate you are going to be haled to the alter.' I am very careful to say what will occur, because I don't know. * * * In fact, I simply say ' This is likely to be, guard against it, if it is bad. If it is good, make the most of it.' There is no client that comes to me that does not realize they are simply getting my ideas of what the planet will do or so far as the planet indicates. They draw their own deductions. They know so much about astrology. They don't know the mathematical end of it."

In answer to the District Attorney's question. " You merely read the indication? " The defendant testified as follows: " Absolutely, that is all I ever do. I am very careful to do it. I am careful to do it not because I think the law was involved, but because I do not want any responsibility. I do not want to feel that I have anything to do with it. If you tell a person that they are likely to go through some disagreeable experience you don't want to think they are going to think that you had something to do with it. I say I have nothing to do with it, I simply read the signs. An astrologist feels a great deal of responsibility and tries to make it plain. Human nature is very funny."

This is unquestionably potent evidence on the question of the good faith of the defendant which enters largely as an issue of fact in all this class of cases.

Counsel contends that the defendant did not pretend to foretell any event that all that occurred was an attempt on her part to explain the positions of the planets and read their indications without any assurance by the defendant that such reading was a prognostication of future events. It seems that

the testimony of the defendant bears this out and must be given greater weight for its probative force.

There is no claim here that the defendant was garbed in special garments or that there was any air of mysticism about the place; it was a simple apartment with library furniture without signs of any kind in or about the studio, except to indicate that it was the office of the defendant.

The defendant asserts that she is an astrologist by profession having followed it since 1897, and that her studies were begun in Boston, Mass., under J. Haber Smith, professor of Materia Medica and in research work in astrology. At first, defendant's work was to compile cases for research work. Several works on modern astrology as well as very old books on the subject were produced in court, and in particular one claimed to be among the best authorities on astrology written by Richard Garnet, who has correlated many instances in which people have gone insane or met with accidental death. These were used by the defendant while testifying and in the construction of the horoscope in a supposed case. In the reading of the horoscope the defendant went through an absolutely mechanical, mathematical process to get at her conclusions. She claims that astrology never makes a mistake and that if the figures are correct, the information given is correct.

A blank chart with twelve (12) divisions is used for the purpose of ascertaining the exact position of the planets at the moment any individual is born. The defendant raises astrology to the dignity of an exact science—one of vibration, and she claims that all the planets represent different forces of the universe.

Defendant's counsel states in his brief:

" Astrology is the science which describes the influence of the heavenly bodies upon mundane affairs and upon human character and life. It is a mathematical or exact science as it is based upon astronomy which describes the heavenly bodies and

explains their motions, etc. It is an applied science in that it takes the established principles of astronomy as its guide in delineating human character, and all its judgments are based on mathematic calculations. It is an empirical science, because its deductions are based upon accurate data that have been gathered for thousands of years. Astrology is the oldest science in existence. It is not only pre-historic but pre-traditional, and must not be classed with fortune telling, or any of the many forms of demonology as practiced in ancient and modern times. Astrology is the science of the effects of the Solar Currents, on the living things of our earth, especially on human life. The earth in revolving around the sun passes through twelve different currents of Solar Fluid which also have twelve distinct parts, thus causing the great diversity in human life. * * * The Encyclopedia Britannica points out the distinction between ' natural astrology ' which predicts the motions of the heavenly bodies, eclipses, etc., and ' judicial astrology ' which studies the influence of the stars on human destiny. As this leading authority of the world goes on to say ' The belief in a connection between the heavenly bodies and the life of man has played an important part in human history.' It continues ' Men of intellectual eminence like Dr. Richard Garnet have convinced themselves that astronomy, i. e., Astrology—has a foundation of truth. Dr. Garnet insisted indeed that it was a mistake to confuse astrology with fortune-telling, and maintained that it was a physical science just as much as geology depending on ascertained facts, and grossly misrepresented by being connected with magic.' "

In Bacon's Advancement of Learning, it is stated: " In astrological traditions, the natures and dispositions of men are tolerably distinguished according to the influences of the planets; whence some are said to be by nature formed for contemplation, others for politics, others for war, etc."

The " science " of astrology seems to be the generalization

of certain principles gathered from the concrete phenomena presented by the heavenly bodies and their application to mundane affairs. Those who work with it have a form of tables' and a co-ordination of instances upon which they act and create their axioms, and one must be led to believe that there is considerable force in their arguments. In this, as in all new theories and discoveries, so in the field of endeavor and thought, there are to be found those who hesitate and doubt until a masterly has fixed it in the minds of the majority, as a science. Whether minds are prepossessed or limited, the sincerity of the defendant's determination upon the opinion of her work from her own perceptions and a study of authorities cannot be questioned. She certainly does seem to have a thorough knowledge of the subject. And in this, she claims no faculty of foretelling by supernatural or magical means that which is future, or of discovering that which is hidden or obscure; but she does claim that nature is to be interpreted by the influences that surround it. The defendant testified: " All the planets represent different forces of the universe. Astrology is a science of vibration. Some of the planets represent harmonious rate of vibration. Others, those which we call discord. Having admitted that light permitted to shine on plant life at a certain angle makes that plant grow, and the same light at another angle destroys life. That is the same theory that we work with in astrology. Q. Is that vibration a light vibration? A. If you can explain vibration I cannot. Q. It is an unkown force or element? A. We only know that the difference between red and blue is vibration. We have proven that Saturn represents one rate, Hershel another and Neptune another. Q. Colors are visible? A. Vibration is not. Q. Is this element, this force, whatever it may be, visible? A. Only in its expression. Q. Has it an effect on vegetable life? A. Yes. Q. Just as it has on animal life, for animals as well as human beings? A. Yes, sir, everything that lives. * * * Q. Going back to

Jupiter's influence on the daughter's life in 1915 why do you think that vibration or that the influence of Jupiter itself in all his changes, the conditions would be more harmonious?    A. Because mathematically in 1915 it was going to form an angle that we call fortunate.    Q.  An angle with relation to?    A.  To Hershel in her daughter's horoscope.    Q.  Does the earth enter in their relation at all?    A.  We are on earth.  We take everything from earth.  The earth is the centre on which we stand, and angles are drawn.  That is the only difference between these books and the Nautical Almanac.  The Nautical Almanac takes the sun as the centre.  These books take the earth as the centre.    Q.  You figure out angles?    A.  Yes, sir, logarithms."

The statute in question is peculiarly worded.  " Pretend to tell fortunes " are to be considered.  This law was designed to prohibit persons who make pretense or make believe to tell fortunes.  A deception or concealment of the truth is essential in each case.  It is really a certain degree of quackery practiced to the detriment of the community, in general, that is made unlawful by this statute.

What is fortune-telling, and who is a fortune-teller?  The Standard Dictionary says " That to tell one's fortune or tell fortunes is to foretell what is to happen to one, or to practice the prediction of future events with reference to persons, through some professed faculty of penetrating, or specific means of calling up, the secrets of the future."  And it defines " Fortune teller " as " one who tells or reveals future events in the life of another; one who pretends to a knowledge of future events, and makes a practice of foretelling them."

When the defendant prepared her horoscope of the complainant and got the relative position of the planets at the time of her birth, basing this horoscope on the well-known and fixed science of astronomy, she violated no law.  Her explanation of the relative positions of the planets constituted no violation of law.  For the palmist to tell that a certain line in the palm of

the hand is the " life line " or the " head line " or the " heart line " has never been held, as far as I know, a violation of this law now under consideration, but it has been held to constitute one a disorderly person, within the meaning of this statute, to say that the life of a certain individual will be long or short. At best, this is but a guess or conjecture  To prophesy that one will be more happy in the future than he has been in the past might under certain circumstances constitute a violation of the said section of the Code of Criminal Procedure.

The defendant has given ample proof that she is a woman of learning and culture, and one who is very well versed in astronomy and other sciences.  Her chart here, as made out, may be verified, as she states, by those who may be disputatious on the subject of its accuracy in the books and records of as-tronomers for years.  And when the defendant stated to the prosecutrix that these planets and their relative positions in-dicated this or that, and this or that ought to happen, if the signs meant anything, with the distinct understanding had be-tween them that the defendant was giving no assurance that this or that eventually would take place, I say she violated no law.

I do not mean to hold that an astrologer may not violate this law under consideration.  Every fortune-teller is a violator of the law; but every astrologer is not a fortune-teller.  I believe that there is a line of distinction between the person who pre-tends to be able to read the future and tell with positiveness what will or shall happen; and the one who merely reads a sign as indicating what ought to happen but is particular to make it plain that he is not attempting to predict future events.  The former is a charlatan, an oppressor and an imposter; the latter is surely not a fortune-teller as he is commonly understood.

I want to make myself plain on this subject.  No rule can be laid down and fixed that will fit all cases.  Each case must de-pend upon its own peculiar set of circumstances for a decision.

The Magistrate is best able to determine who is and who is not such an imposter.  He has the party before him and a close examination of the case should furnish proof of the bona fides of the case.

I am satisfied that the element of fraud which we usually find accompany the fortune-tellers' case is absent here.

On almost precisely the same state of facts this defendant, I am assured, was arraigned, tried and discharged before Magistrate Murphy.  It is likely that she would have attempted to violate the law knowing as she must have that she was the subject of police surveillance?  The plain object of the statute here is to protect the fool and the credulously weak from the knavery of those who claim wisdom and who resort to trickery and every device known to cunning as a means of gain in some form.  I do not hold that criminal intent is essential but I assume that this law sought to ferret out and enjoin those, who, by such practices as were dishonest and dishonorable in a measure, induce people to place reliance in their statements of future happenings.

It is to be admitted that a certain class of fortune-tellers may be honest in their purposes and honestly believe the things they say to be true.  There are people in this world who claim with earnestness that they have superhuman powers and that their specific means of reading the future are reliable; yet the law is not concerned so much with the good faith of the party pretending to possess this ability, as it is concerned with dealing in a human way with the things that are within human knowledge only.  Common experience teaches many things; in fact, the science are predicated upon the fact developed in the affairs of the world as men have experienced them.  No doubt many many years ago for anyone to have attempted to say that the conformation of the head of that the physiogonomy of a creature determined the character of the individual and that such and such a type would some day turn out to be a criminal would

have been guilty of fortune telling.   But the history of specific cases has furnished us with a working basis for these new theories that nowadays seem to be accepted by noted criminologists and the public in general.   So it is claimed here in behalf of the defendant that records prove that certain personages of note classed under certain planets in the ascendency of the time of their birth have come to death in a certain way and that therefore all others born in similar conditions should meet the same fate.

I am satisfied that the defendant has not pretended to tell fortunes, and she is accordingly acquitted.